**A. N. DERINGER, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 3101; Protest 64/23154–4301.**

United States Customs Court
Second Division.

Aug. 30, 1967.

**988**

Joseph C. McNeil and Francis D. Foley, Burlington, Vt., for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Bernard J. Babb, trial attorney), New York City, for defendant.

Before RAO and FORD, Judges.

RAO, Chief Judge:

The above protest is directed against part of an importation from Canada which, according to the entry papers received in evidence without being marked, consisted in its entirety of sulky wheels, spokes and dashes, sulky tires, canvas covers for sulkies, one new complete sulky, and the refinishing of 11 sulkies of Canadian origin, exported to Canada for repairs. The importation was liquidated on June 11, 1962, for customs duty purposes practically as entered by plaintiff herein. Within 2 years of the date of liquidation the customs authorities reliquidated said entry pursuant to section 521 of the Tariff Act of 1930, the provisions of which read as follows:

If the collector finds probable cause to believe there is fraud in the case,

he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

As a result of the reliquidation of the entry, merchandise previously liquidated at 10 per centum ad valorem as manufactures of wood in paragraph 412 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, or granted the benefit of free entry in paragraph 1615 of the basic tariff act as articles exported from the United States for repairs, was reliquidated on the basis that said merchandise should properly have been classified as articles or wares, not specially provided for, composed wholly or in chief value of base metal, in paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for which the applicable rate of duty is 19 per centum ad valorem. It is against such advance in duty rate that the present protest has been filed.

As to the merits of plaintiff's claim for classification at the lower rate of duty, the action of the classifying official carries with it the presumption of correctness and the burden of proof to show that it is wrong falls to the plaintiff. United States v. Victoria Gin Co., Inc., W. H. Morton, 48 CCPA 33, C.A.D. 759. However, no such presumption attaches to the action of the customs official in reliquidating the entry pursuant to the terms of section 521 of the tariff act, supra.

As was stated in the case of United States v. Waterbury Lock & Specialty Co., 35 CCPA 131, C.A.D. 384, "The law is well settled that where the collector reliquidates an entry on the ground of fraud, his action in so doing is not presumptively correct to the extent of requiring the importer to assume the burden of disproving the fraud. F.

Vitelli & Son v. United States, 250 U.S. 355 [39 S.Ct. 544, 63 L.Ed. 1028]." In other words, the burden of proof as to probable cause to believe fraud existed is upon the defendant. First consideration must be directed to this point.

Frank Brodeur, vice president and "chief operating man" of Brodeur Sulky Mfg. Inc. of Montreal, Canada, engaged in the manufacture and sale of jog carts and sulkies, was called to testify on behalf of plaintiff. Brodeur, when shown the pro forma invoice filed in connection with the entry covering the instant importation, stated that said document had been prepared in accordance with his instructions, based on information that he had supplied, and that the invoice was signed by him. The pro forma invoice referred to specifies *inter alia* "1 new sulky complete" and "11 refinished sulkies exported from the United States for repairs". At another point in his testimony Brodeur stated that the sale to the ultimate consignee of the merchandise at bar included two sulkies and one jog cart. There are other indications in the papers in evidence that possibly more new sulkies and jog carts were involved.

The witness explained that a jog cart is used to train a horse for racing whereas a sulky is used for racing only.

In addition to Brodeur's admission to conflicting evidence as to the pro forma invoice and the actual shipment, he admitted on cross-examination by Government counsel that he had been convicted of the crime of wilfully filing false invoices on importations into the United States involving sulkies such as those presently in issue.

■ On the facts thus disclosed, the Court is of the opinion that the defendant has sustained its burden of proof and when the foregoing information came to the knowledge of the customs classifying officer he had firm ground upon which to believe fraud existed in the entry of the merchandise. He was, therefore, within his statutory right to reliquidate the entry within 2 years of the original liquidation pursuant to section 521 of the Tariff Act of 1930.

■ The next consideration is whether the plaintiff has shown the classification of the merchandise at bar upon reliquidation to have been erroneous and that its claimed classification is the correct one.

On this phase of the case the record is confusing and conflicting.

Among exhibits received in evidence were the following:

Plaintiff's exhibit 1—"catalog pamphlet" of Brodeur Sulky Mfg. Inc.

Plaintiff's exhibit 2—pages 3, 4, 5, 10, 11, 14, and 15 of a 20-page catalog of the same company, depicting sulkies, jog carts and parts thereof.

Plaintiff's collective exhibit 3—a listing of jog cart components as to quantity, supplier, unit price and total, together with supporting invoices.

Plaintiff's collective exhibit 4—a like enumeration of sulky components, together with supporting invoices.

Plaintiff's witness Brodeur was asked item by item the various costs of the components of jog carts. Using as a reference collective exhibit 3, he stated that the total of the wood items came to $48.90, and that for components other than wood the total was $40.61, which figures appear to be supported by said exhibit 3. Although not asked to specify item by item the cost of the components which go to make up a sulky, Brodeur gave a total for the wood items of such vehicles as $40, which appears to be supported by collective exhibit 4, and a total for the nonwood items of $34.26, which is not in harmony with the figures indicated in said exhibit 4.

Mark Gardner, Customs Agent in Charge at St. Albans, Vermont, was called as a witness for the defendant. He stated he was familiar with the instant importation by reason of the fact that he was called upon to conduct an investigation thereof, as a result of which he submitted a report to the United States Attorney. In the course of his investiga-

tion he had a conference with plaintiff's witness Brodeur at the latter's place of business in Montreal, at which time Gardner announced he was there to determine the component material of chief value comprising the importation of sulkies up to the point of final assembly of said components. From information supplied to him at that time by Brodeur either from invoices or from memory, Gardner compiled a listing of the various items, which listing was received in evidence as defendant's exhibit A. During the conference which lasted about an hour and a half, Brodeur admitted to Gardner that figures previously submitted to customs authorities were not correct. The figures reflected by defendant's exhibit A indicate the total value of mental components to be $35.16 and for the wood components $32.30.

The court is of the opinion that the evidence offered by the parties hereto, which in final analysis all traces back to witness Brodeur, tends to confuse rather than to clarify the point in issue, namely, whether metal or wood was the component material in chief value of the merchandise at bar. Plaintiff seeks to succeed in its case in part on the contention referred to in its brief that "Defendant offered no affirmative evidence on this central issue as to whether the chief value was wood."

As stated above, it did fall to the defendant to carry the burden of proof as to the existence of fraud as the basis of reliquidating the instant entry within 2 years after date of liquidation. However, as to the merits of the classification on reliquidation—"[T]he burden of proof is on a protestant to show not only that the collector's classification is wrong but also to establish the classification of the merchandise in issue which is asserted by the protestant to be the proper classification." United States (Index Industrial Corp., Party in Interest) v. National Starch Products, Inc., 318 F.2d 737, 50 CCPA 1, C.A.D. 809.

Moreover, as stated in said *National Starch* case, supra—

Unless there is substantial evidence in the record to establish the propriety of the protestant's asserted classification of the imported merchandise, the protest must be overruled and it is unnecessary to consider whether or not the collector's classification is wrong. United States v. H. V. Albrecht, etc., 27 CCPA 112, 117, C.A.D. 71; W. T. Grant Co. v. United States, 38 CCPA 57, 65, C.A.D. 440; United States v. Cody Manufacturing Co., Inc., et al., 44 CCPA 67, 74, C.A.D. 639; Davies et al. v. Miller et al. 2 Cir., 91 F. 647.

After due consideration of the record here presented, the Court is of the opinion that plaintiff has failed to sustain the burden placed upon it not only of proving that the classification of the contested merchandise by the customs authorities was erroneous but that its classification claim is correct. In the circumstances, therefore, we have no other course but to overrule all claims in the protest.

Judgment will issue accordingly.

FORD, J., concurs.